UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CORNELIUS GREEN,

                              Plaintiff,
     v.                                              **REPORT**
                                                      **and**
DR. CRISTINA MISA[1]                                  **RECOMMENDATION**

                                                     **09-CV-01106A(F)**

                              Defendant.

---

APPEARANCES:            CORNELIUS GREEN, *Pro Se*
                                  00-B-1916
                                  Attica Correctional Facility
                                  Box 149
                                  Attica, New York 14011

                                  ERIC T. SCHNEIDERMAN
                                  Attorney General, State of New York
                                  Attorney for Defendants
                                  STEPHANIE JOY CALHOUN
                                  Assistant New York Attorney General, of Counsel
                                  Main Place Tower
                                  Suite 300A
                                  350 Main Street
                                  Buffalo, NY 14202

## JURISDICTION

This case was referred to the undersigned by Honorable Richard J. Arcara on March 31, 2011 for all pre-trial matters including preparation of a report and recommendation on dispositive motions. (Doc. No. 18). The matter is presently before the court on Defendant's motion for summary judgment (Doc. No. 28), filed April 25,

---

[1] The court notes various spellings of Dr. Misa's first name. The court will only refer to the correct spelling noted in Dr. Misa's Declaration. Defendant's Declaration at 1.

2012.

## **BACKGROUND**

Plaintiff Cornelius Green ("Plaintiff" or "Green"), proceeding *pro se*, commenced this civil rights action on December 28, 2009, while incarcerated at Attica Correctional Facility ("Attica") or "the correctional facility"), alleging that Defendant Lester Wright, M.D. ("Dr. Wright" or "Defendant")), denied Plaintiff knee surgery in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. (Doc. No. 1). Plaintiff alleges that Defendant's failure, between August 1, 2008 and April 30, 2009, to perform patellofemoral stabilization surgery on Plaintiff's left knee caused Plaintiff pain and suffering, rendering Plaintiff unable to bend his knee.

On April 9, 2010, Defendant Wright moved to dismiss the complaint ("First Motion to Dismiss"), for failing to allege specific facts to support Defendant Wright's personal involvement in Plaintiff's alleged constitutional deprivations. (Doc. No. 5). Plaintiff filed a reply on May 7, 2010, asserting that defendant's involvement is based on Defendant's maintenance of a policy that leads to Eighth Amendment violations. (Doc. No. 7). By Decision and Order filed September 1, 2010 (Doc. No. 9), ("September 1, 2010 D&O"), Defendant's motion to dismiss was granted but, based on the existence of factual questions as to why surgery recommended by the prison physician was not provided, Plaintiff was granted leave to amend the complaint. September 1, 2010 D&O at 5. On October 13, 2010, Plaintiff filed an amended complaint ("First Amended Complaint") terminating Wright as a defendant and naming "D.O.C.S." and "John or Jane Doe" as defendants. First Amended Complaint at 1. On October 18, 2010, Defendant filed Defendant's Second Motion to Dismiss (Doc. No. 11)

on the grounds that claims against the D.O.C.S. are barred by the Eleventh Amendment.  By Decision and Order filed on January 6, 2011 (Doc. No. 14) (Jan. 6, 2011 D&O), D.O.C.S. was dismissed as a defendant, and ordered the New York State Attorney General's Office, to use its efforts to ascertain the full name of the medical provider Plaintiff alleges denied him the recommended surgical procedure. January 6, 2011 D&O at 2.  On February 1, 2011, Defendant provided the requested information and by order filed February 22, 2011 (Doc. No. 16) ("February 22, 2011 Order"), D.O.C.S. was dismissed as a defendant, and Regional Medical Director Cristina Misa, M.D. ("Dr. Misa" or "Defendant"), was named as Defendant in place of "John or Jane Doe."  On April 25, 2012, Defendant filed Defendant's Motion for Summary Judgment (Doc. No. 28) ("Defendant's motion"), along with supporting papers, including Defendant's Statement of Undisputed Facts in Support of Defendant's Motion for Summary Judgment (Doc. No. 28-1) ("Defendant's Statement of Facts"), a Memorandum of Law in Support of Defendant's Motion for Summary Judgment (Doc. No. 28-2 ) ("Defendant's Memorandum"), and the Declaration of Dr. Misa, in support of Defendant's motion (Doc. No. 28-3).  On June 4, 2012, Plaintiff filed a Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment. (Doc. No. 31) ("Plaintiff's Memorandum").  Oral argument was deemed unnecessary.  Based on the following, Defendant's motion should be GRANTED.

## FACTS[2]

This action concerns unsuccessful attempts by Plaintiff to obtain surgery on the patella of Plaintiff's injured left knee, resulting in the disintegration of Plaintiff's anterior cruciate ligament ("ACL"), and posterior cruciate ligament ("PCL") of Plaintiff's left knee, and pain. Second Amended Complaint at 5.

On September 5, 2007, while incarcerated at Attica Correctional Facility ("Attica"), Plaintiff injured his left knee playing football. Plaintiff was treated with an ace bandage, crutches, and ice to relieve swelling, and given Motrin for pain. On September 10, 2007, Plaintiff underwent a left knee X-Ray and was scheduled for a follow-up appointment one week later. At Plaintiff's follow-up appointment on September 17, 2007, Plaintiff complained of left knee pain and instability with tenderness and swelling of Plaintiff's calf. Plaintiff was recommended to continue using crutches and scheduled for magnetic resonance imaging ("MRI"). On October 2, 2007, John Ellis, M.D. ("Dr. Ellis") completed an MRI of Plaintiff's left knee, assessing a complete tear of Plaintiff's ACL and PCL, and a complete tear of Plaintiffs proximal medial collateral ligament, leading Dr. Ellis to order an orthopedic consultation.

On October 25, 2007, G. Coniglio, M.D. ("Dr. Coniglio") completed a consultative physical examination of Plaintiff's left knee, diagnosed Plaintiff with a torn medial meniscus, and recommended Plaintiff undergo left knee arthroscopy (procedure that affords a view inside a person's joints) and ligament repair surgery. On November 6, 2007, Dr. Coniglio completed arthroscopic surgery on Plaintiff that revealed a normal

---

[2] Taken from the pleadings and motion papers filed in this action.

patellofemoral joint (one of three knee compartments), normal medial meniscus (band that spans the knee joint), a normal femoral condyle (one of two projections on the lower extremity of the femur), and normal medial tibial plateau. Dr. Coniglio also stated the arthroscopic procedure showed Plaintiff's ACL and PCL were "completely gone" having been avulsed (forcibly detached) at Plaintiff's femur. Dr. Coniglio proceeded to repair a radial tear in the mid-portion of Plaintiff's lateral meniscus that included hemispherical resection.

On November 30, 2007 Plaintiff returned to Dr. Coniglio, with complaints of left knee pain, clicking and popping, and an unstable knee joint that gives way. Upon examination, Plaintiff's range of motion was 0-120 degrees, Plaintiff exhibited severe pain with lateral buttressing of the left patella, and tenderness over the medial femoral condyle. Dr. Coniglio diagnosed Plaintiff with symptomatic left patellofemoral instability in the context of multiple instabilities and recommended Plaintiff undergo left patellofemoral realignment surgery. Dr. Coniglio further opined that because Plaintiff's pain symptoms were most attributed to Plaintiff's patellofemoral injury, patellofemoral surgery would "relieve a lot of [Plaintiff's] symptoms" and preclude any possible complications related to a surgical repair of Plaintiff's ACL. Plaintiff, however, did not undergo patellofemoral surgery, attending physical therapy from January 10, 2008 through June 26, 2008 instead. On May 30, 2008, Plaintiff was pain free upon entering physical therapy, and on June 2, 2008, had no new complaints of pain.

On July 23, 2008, Plaintiff sought treatment for continued knee pain and instability from John Schwab, M.D. ("Dr. Schwab"), who referred Plaintiff back to Dr. Coniglio. Dr. Coniglio again diagnosed Plaintiff with left knee patellofemoral instability

and recommended patellofemoral stabilization surgery. On August 13, 2008, Dr. Misa denied Dr. Coniglio's recommendation for surgery on Plaintiff's left knee opining "the medical rationale for the procedure was unclear . . . [and there] was not a clear medical reason for the surgery when physical therapy had shown to work very well for [Plaintiff]." Defendant's Declaration at 2-3. On January 13, 2009, Plaintiff, complaining that his left knee still gave out, requested knee surgery which was denied by Defendant. On April 30, 2009, Plaintiff requested surgery a second time.

On May 30, 2009, Michael S. Fishman, M.D. ("Dr. Fishman") conducted an MRI of Plaintiff's left knee that revealed a small vertical tear in Plaintiff's lateral meniscus. Dr. Fishman opined that Plaintiff's ACL and PCL were not seen as intact structures. On June 25, 2009, Plaintiff sought treatment for a hand injury suffered while playing hand ball. On July 30, 2009, Dr. Coniglio completed a physical examination of Plaintiff and again recommended Plaintiff undergo left patellofemoral realignment surgery. On September 21, 2009, Dr. Misa approved surgery to reconstruct Plaintiff's ACL and PCL. On November 16, 2009, Rao Jadow, M.D. ("Dr. Jadow") provided a consultative opinion that Plaintiff undergo a left knee MRI. On November 24, 2009, Dr. Jadow completed a consultative opinion and determined Plaintiff should undergo a repeat MRI in order to properly evaluate Plaintiff's ligaments. On January 11, 2010, Dr. Jadow authorized ACL and PCL reconstructive surgery of Plaintiff's left knee and lateral meniscus repair, and on March 3, 2010, Geoffrey Bernas, M.D. ("Dr. Bernas") completed reconstructive surgery on Plaintiff's knee that included left ACL reconstruction, left PCL reconstruction, left partial medial meniscectomy (repair of Plaintiff's meniscus), left medial femoral condyle chondroplasty (shaving of cartilage), and loose body excision (removal of

cartilage) without complication.

Plaintiff's Medical Records[3] for the relevant time period – September 8, 2007 through March 3, 2010 – establish that Plaintiff received medical treatment on at least 40 occasions, mostly for chronic knee pain.

## DISCUSSION

**1.    Summary Judgment**

Defendant argues in support of summary judgment, that Plaintiff cannot establish the requisite elements of his Eighth Amendment deliberate indifference claim[4], namely the objective and subjective components. Defendant's Amended[5] Memorandum at 2-8. In opposition to summary judgment, Plaintiff alleges Plaintiff has established both the objective and subjective elements of a deliberate indifference claim. Plaintiff's Response at 3-7. In further support of summary judgment, Defendant asserts that Plaintiff received treatment consistent with prevailing standards of medical care, and there was no deliberate indifference to Plaintiff's medical needs. Misa Reply Declaration ¶ 27, 28.

Summary judgment on a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477

---

[3] Defendant's Exh. A and B.

[4] Plaintiff asserts only a single claim against Defendant.

[5] Defendant filed the Amended Memorandum to correct the omission of the date and signature.

U.S. 242, 250-51 (1986); *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010). The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and, if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment. *Celotex*, 477 U.S. at 322.

Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor and "may not simply rely on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995) (citing cases). Rather, Fed. R. Civ. P. 56(e) requires that

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

"[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir.1996). However, because Plaintiff is proceeding *pro se*, the court is required to liberally construe Plaintiff's papers submitted in opposition to summary judgment. *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2009) ("It is well established that the submissions of a pro se litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'") (quoting

*Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006))

Defendant, Dr. Misa, is alleged to have violated Plaintiff's civil rights under 42 U.S.C. § 1983 ("Section 1983" or "§ 1983"), pursuant to which an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States. Section 1983, however, "'is not itself a source of a substantive rights,' but merely provides 'a method for vindication of federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, *supra*, at 140). Here, Plaintiff alleges Defendant violated Plaintiff's constitutional rights under the Eighth Amendment by exhibiting deliberate indifference to Plaintiff's serious medical need, *i.e.*, failing to timely provide patellofemoral surgery and properly treat Plaintiff's left knee causing Plaintiff to suffer pain and further injury. Second Amended Complaint, First Claim.

Defendant argues that Plaintiff is unable to establish both the objective and subjective elements necessary for an Eighth Amendment deprivation of medical care claim. Defendant's Memorandum at 3 (citing *Liner v. Goord*, 115 F. Supp. 2d 432, 435 (S.D.N.Y. 2000)). Although Defendant concedes that debilitating pain and degeneration as a result of Defendant's denial to perform surgery on Plaintiff's left knee can be sufficiently serious as to meet the objective element of an Eighth Amendment claim, Defendant alleges Plaintiff was never, as a result of a deprivation of treatment, placed in a condition of urgency that may produce death, degeneration, or extreme

pain, as required to establish the objective element of the claim. *Id*. at 3-4. Defendant further maintains that Plaintiff cannot prove that Defendant acted with a sufficiently culpable state of mind to establish the requisite subjective element. *Id*. at 6-7 (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

In opposition to summary judgment, Plaintiff maintains that the record establishes the objective element of Plaintiff's Eighth Amendment claim, given that the treatment plan to include ligament repair during Plaintiff's arthroscopic surgery completed on November 6, 2007 was not followed resulting in Plaintiff's extreme pain. Plaintiff's Response at 2-3. Plaintiff further contends that the subjective element of Plaintiff's Section 1983 claim is satisfied given that Dr. Misa, despite the knowledge that Dr. Coniglio recommended left patellofemoral surgery for Plaintiff on November 30, 2007, July 23, 2008, and July 30, 3009, denied Dr. Coniglio's recommendation for patellofemoral surgery on July 30, 2009, and Plaintiff's subsequent requests for ACL and PCL reconstruction surgery on January 13, 2009 and April 30, 2009. Plaintiff's Response at 4.

The Eighth Amendment prohibits "cruel and unusual punishments" during imprisonment. U.S. Const. 8th amend.; *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Romano v. Howarth*, 998 F.2d 101, 104 (2d cir. 1993). Deliberate indifference to an inmate's serious medical needs is within the ambit of the Eighth Amendment protection. *Trammell v. Keane*, 338 F.3d 155, 162 (2d Cir. 2003) (observing different tests for evaluating Eighth Amendment claims for excessive force, conditions of confinement, and denial of medical care).

"In order to establish an Eighth Amendment claim arising out of inadequate

medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (bracketed text in original)). In addition to death, a serious medical condition exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Chance*, 143 F.3d at 702. The standard for determining whether there has been an Eighth Amendment violation based on deliberate indifference to a prisoner's serious medical needs

> incorporates both objective and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison officials acted with a sufficiently culpable state of mind.

*Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (citing *Estelle*, 429 U.S. at 104, and *Hathaway v. Coughlin*, 99 F.3d 550. 553 (2d Cir. 1996)).

As to the objective prong, a sufficiently serious condition is "a condition of urgency, one that may produce death, degeneration or extreme pain." *Hathaway*, 99 F.3d at 66. The Second Circuit recognizes several factors relevant to the seriousness of a medical condition including: (1) the existence of an injury that a reasonable doctor or patient would find important or worthy of comment or treatment; (2) the presence of a medical condition that significantly affects a person's daily activities; and (3) the existence of chronic and substantial pain. *Chance,* 143 F.3d at 702. With regard to an Eighth Amendment deliberate indifference claim based on the denial or delay of orthopedic surgery, the Second Circuit has held that where the inadequacy alleged is based on the medical treatment given, the seriousness inquiry narrows. *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). In instances where the prisoner receives

11

ongoing treatment and the offending conduct is unreasonable delay in the treatment, the seriousness inquiry should focus instead on the challenged delay in treatment rather than the prisoner's medical condition alone. *Id*. The particular risk of harm faced by the prisoner from the deprivation of care is the focus rather than the severity of the medical condition. *Smith*, 316 F.3d at 178. In the instant case, Plaintiff alleges the Defendant's delay in approving Plaintiff's patellofemoral surgery resulted in further injury to Plaintiff's ACL and PCL. This allegation is without merit, and thus insufficient to establish an issue of fact as to whether Defendant's delay in approving Plaintiff's patellofemoral surgery necessarily resulted in degeneration of Plaintiff's ACL and PCL so as to establish the objective prong of Plaintiff's Eighth Amendment claim.

Here, Dr. Coniglio recommended Plaintiff <u>not</u> undergo ACL or PCL reconstructive surgery in light of that surgery's foreseeable complications, and opined Plaintiff's ACL and PCL were not visible on Plaintiff's MRI scans on October 2, 2007 and May 30, 3009, or during Plaintiff's arthroscopic surgery on October 25, 2007. Plaintiff points to no evidence to support the conclusion that a delay in Dr. Coniglio's recommended patellofemoral surgery would result in further degeneration of Plaintiff's ACL and PCL, *see Williams v. Wright*, 162 Fed.Appx. 69, 72 (2d Cir. January 12, 2006) (citing *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002)), and Plaintiff's reliance on a disputed "matter for medical judgment" is not enough to establish deliberate indifference sufficient to withstand summary judgment. *See Estelle*, 429 U.S. at 107; *Hernandez v. Keane*, 341 F.3d 137, 146-47 (2d Cir. 2003). Deliberate indifference may exist where a prisoner's treating physicians are in consensus that treatment is necessary and prison officials rely instead on guidelines for conservative treatment.

*Rodriguez v. Federal Bureau of Prisons*, 2012 WL 6965109, at *10 (N.D.N.Y. November 30, 2012) (citing *Ippolito v. Goord*, 2012 WL 4210125, at *13-14 (W.D.N.Y. Sept. 19, 2012)). Here however, Plaintiff's physical therapy treatment was working, Dr. Misa's Declaration ¶¶ 9-15 (citing Plaintiff's medical records), and none of Plaintiff's treating physicians opined that the recommended patellofemoral surgery would correct Plaintiff's ACL and PCL deformity. As such, construing the evidence in the light most favorable to the nonmovant, Plaintiff, and drawing all reasonable inferences in Plaintiff's favor, as required on summary judgment, *Allianz Insurance Company v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005), establishes no issue of fact exists as to whether Defendant's delayed approval of Plaintiff's patellofemoral surgery resulted in degeneration of Plaintiff's ACL and PCL as required under the objective component of Plaintiff's Eighth Amendment claim. Defendant's motion for summary judgment on this ground should be GRANTED because the objective prong of the two-prong deliberate indifference test cannot be established.

Because the decision is before this court for a report and recommendation, the court however, in the interest of completeness, proceeds to examine the subjective component of Plaintiff's Eighth Amendment claim.

Denying or delaying access to medical care or intentionally interfering with prescribed treatment may constitute deliberate indifference. *Estelle*, 429 U.S. at 104 ; *see Rodriguez v. Federal Bureau of Prisons*, 2012 WL 6965109 at *10 (N.D.N.Y. Nov. 30, 2012) (failure to approve medically supported surgery where plaintiff experienced extreme pain and suffering sufficient to withstand defendant's motion for summary judgment). Delay in treatment violates the Eighth Amendment "whether the indifference

13

is manifested by prison doctors in their response to the prisoner's needs or by prison guards by intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05. Further, culpable intent requires the inmate establish both that a prison official "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Hayes v. New York City Department of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer*, 511 U.S. at 834-35).

Nevertheless, neither "inadvertent failure to provide adequate medical care" nor "negligence in diagnosing or treating a medical condition" comprise Eighth Amendment violations. *Estelle*, 429 U.S. at 105-06 (holding medical malpractice does not become a constitutional violation merely because the victim is a prisoner); *Harrison*, 219 F.3d at 139 ("We agree that the mere malpractice of medicine does not amount to an Eighth Amendment violation."). A "mere disagreement" with a physician over the appropriate course of treatment does not arise to a constitutional violation, although in certain instances a physician may evince deliberate indifference by consciously choosing "an easier and less efficacious" treatment plan. *Chance*, 143 F.3d at 703. Regardless, "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id*.

Where a prisoner is routinely seen for a medical condition, even with a view toward surgery, deliberate indifference does not exist where the Defendant provides varying forms of treatment for orthopedic injuries pending surgical intervention. *Williams*, 2006 WL 93096, at *3 (no deliberate indifference where Plaintiff who refused

hip surgery was simultaneously treated with medication, braces, and other methods to minimize physical distress).

As discussed, Discussion, *supra* at 4, Plaintiff was referred for a left knee X-Ray, left knee MRI scan, and referred to an orthopedic specialist within weeks of the date of Plaintiff's football injury on September 5, 2007. Plaintiff attended physical therapy on a twice weekly basis from January 10, 2008 through June 26, 2008, with good results. Despite the fact that Plaintiff alleges his knee injury significantly affects his daily activities, Plaintiff reported playing handball on June 25, 2009.

Moreover, deliberate indifference does not exist where one doctor recommends surgery while a different doctor concludes surgery is not warranted unless more conservative measures such as physical therapy have not been proven effective. *Matos v. Gomprecht*, 2012 WL 1565615, at *8 (E.D.N.Y. February 13, 2012) (citing *Culp v. Koenigsmann*, 2000 WL 995495, at *9 (S.D.N.Y. July 19, 2000)). Here, nothing in the record contradicts Defendant's determination that Plaintiff's conservative therapy treatment was working, and Defendant's further reliance on Dr. Coniglio's November 29, 2007 opinion that Plaintiff should not undergo ACL and PCL reconstructive surgery. Thus, no material issue of fact exists as to whether Defendant's denial of Plaintiff's requests for ACL surgery on April 30, 2009 and January 13, 2009 constitutes deliberate indifference as required for an Eighth Amendment claim.

Summary judgment as to Plaintiff's claim that Defendant acted with deliberate indifference to Plaintiff's serious medical needs by failing to provide timely surgical intervention on Plaintiff's patellofemoral injury in order to protect against degeneration of Plaintiff's ACL and PCL should therefore be GRANTED.

## **CONCLUSION**

Based on the foregoing, Defendant's motion for summary judgment (Doc. No. 28) should be GRANTED, and the Clerk of Court should be directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: February 28, 2013
Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

      LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    February 28, 2013
              Buffalo, New York